UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| LANDON HARROD, | ) | |
|---|---|---|
| *Plaintiff*, | ) | |
| | ) | Case No. 4:21-cv-39 |
| v. | ) | |
| | ) | Judge Atchley |
| | ) | |
| KENYA LEE, ROCKY RUEHLING, | ) | Magistrate Judge Lee |
| COFFEE COUNTY, TENNESSEE, and | ) | |
| THE CITY OF TULLAHOMA, | ) | |
| TENNESSEE | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion for Summary Judgment by Defendants Kenya Lee, Rocky Ruehling, and the City of Tullahoma, Tennessee. [Doc. 31]. Defendants seek summary judgment as to the singular Count in the Complaint [Doc. 1] alleging unreasonable seizure and asserting liability under 42 U.S.C. §1983. [Doc. 1 at 4-6]. For the reasons explained below, Defendants' Motion will be **GRANTED**, and this case **DISMISSED WITH PREJUDICE**.

I. **FACTUAL BACKGROUND**

Prior to events preceding this matter, Plaintiff Landon Harrod moved to Tullahoma, Tennessee to live with Ashley Brown. [Doc. 33-1 at 4]. On September 6, 2020, an argument erupted between Harrod and Brown when Harrod returned home with groceries. [Doc. 33-1 at 7]. Plaintiff found the apartment locked and proceeded to kick the door. [*Id*.]. These actions prompted a neighbor in a nearby apartment building to call 911. [Doc. 33-1 at 12-14 and Audio Recording 00:23-01:28]. The 911 caller reported that a woman was attempting to hold the door shut while a man was kicking it, and that she was afraid that the man was going to hurt the woman. [Audio

Recording 01:00-02:04].

Defendants Kenya Lee and Rocky Ruehling were dispatched to investigate the 911 call. [Doc. 33-1 at 44]. While en route, Ruehling directly contacted the 911 caller who reported the facts she conveyed to the dispatcher and gave identifying information along with real-time updates. [Doc. 33-3 at 3-5]. Ruehling reported this identifying information to Lee contemporaneously with her encountering Harrod exiting the apartment building.[1] [Audio Recording at 08:14-08:20, Surveillance Video at 00:06-00:20]. Lee approached Harrod, asking what was going on, to which Harrod responded "nothing." [Doc. 33-1 at 22]. Lee then grabbed the front of Harrod's shirt as he tried to walk by. [Surveillance Video at 00:10-00:11]. Harrod proceeded to back away from Lee and attempted to get her to release her grip on his shirt. [*Id.* at 00:11-00:30]. The surveillance video shows Lee pin Harrod up against a vehicle in the parking lot and attempt to restrain his arms for about 30 seconds. [*Id.* at 00:30-01:04]. The parties agree that both Harrod and Lee understood that Lee was attempting to handcuff Harrod at this point. [Doc. 33-1 at 24 & Doc. 32 at 5]. Lee succeeded in getting Harrod pushed up against the car and his hands behind his back. [Surveillance Video at 01:02-01:03]. At that point Harrod broke free of Lee's grasp and sprinted off across the parking lot and through a field with Lee pursuing close behind. [*Id.* at 01:04-01:14]. During the pursuit, Lee's grasp on Harrod's shirt broke free and she fell to the ground as Harrod is seen continuing to run out of frame. [*Id.* at 01:14-end].

It is unclear exactly what caused Lee to fall to the ground, but the video shows Lee stumble and fall while chasing Harrod. [Surveillance Video at 01:11-01:16]. Lee sustained a bruised knee and torn ligament as a result of the incident. [Doc. 33-2 at 8]. Shortly after escaping, Harrod considered his options and decided to turn himself in. [Doc. 33-1 at 31-34]. When Harrod

---

[1] Ruehling relayed to Lee that the male suspect was wearing an orange shirt at about 08:18 on the Audio Recording. Plaintiff can be heard approximately 8-10 seconds later at 08:25-08:27 saying "can you please remove your hands."

approached the remaining officers near the scene, they handcuffed him and accused him of kicking Lee. [*Id*. at 33-34].

Ruehling transported Harrod to the county jail and obtained warrants for aggravated assault and resisting arrest. [Doc. 33-1 at 48-53]. Ultimately, a December 2020 Grand Jury indicted Harrod for three crimes: aggravated assault, resisting arrest, and evading arrest. [Doc. 33-1 at 68]. The charges remained pending until May 18, 2022, when the aggravated assault charge was dropped in response to Harrod pleading guilty to the resisting and evading arrest charges. [Doc. 33-1 at 73-75]. Harrod was given a probation term of 11 months and 29 days, set to expire on May 17, 2023. [Doc. 33-1 at 38-39]. Plaintiff asserts that the probationary period was completed successfully as of May 18, 2023, but has not provided any documentation that the misdemeanor charges have been expunged. [Doc. 37 at 4].

Plaintiff Harrod brought this action on September 7, 2021, asserting claims under 42 U.S.C. § 1983 against all defendants for unreasonable seizure.[2] [Doc. 1 at 4-6]. Defendants Lee and Ruehling plead the affirmative defense of qualified immunity, stating that they acted as any reasonable officer in the situation would have. [Doc. 15 at 5]. Defendants moved for summary judgment, specifically asserting 1) that Defendant Lee had reasonable suspicion to detain Plaintiff Harrod which ripened into probable cause for his arrest when he resisted her efforts to detain him; 2) that Defendant Lee did not use excessive force in attempting to detain or handcuff Plaintiff Harrod; 3) that Defendant Ruehling had probable cause to arrest Plaintiff Harrod, precluding false arrest and malicious prosecution claims; and 4) that the City of Tullahoma cannot be held liable because Defendants Lee and Ruehling did not commit any constitutional

---

[2] In the Complaint, Plaintiff asserts a wide variety of theories including false arrest and excessive force against both named officers and what is effectively a *Monell* claim against the City of Tullahoma as well as Coffee County. [Doc. 1 at 4-6].

violations. [Doc. 31 at 1-2]. Plaintiff Harrod responded arguing against Defendants' claims. [Doc. 37]. Defendants replied reiterating their original arguments and additionally asserting that Plaintiff failed to show any robust consensus of cases clearly establishing a constitutional violation as required to defeat the affirmative defense of qualified immunity. [Doc. 38].

Upon review of the briefing, Plaintiff has abandoned his excessive force claims "except insofar as no seizure should have happened at all." [Doc. 37 at 1]. What remains for the Court are the questions of reasonable suspicion and/or probable cause as to Officer Lee in connection with her stop of Plaintiff Harrod, the question of probable cause for arrest as to Officer Ruehling, and the question of *Monell* liability as to the City of Tullahoma.

## II. LAW

Federal Rule of Civil Procedure 56 instructs the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the presence or absence of genuine issues of material fact must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1). When ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). But,

where there is "'a videotape capturing the events in question,' the court must 'view the facts in the light depicted by the videotape.'" *Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012) (quoting *Scott v. Harris*, 550 U.S. 372, 378-81 (2007)).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586; Fed. R. Civ. P. 56).

The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248-49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)); see also *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475-76 (6th Cir. 2010). A mere scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

To state a claim under 42 U.S.C. §1983, a plaintiff must show: 1) the allegedly wrongful act occurred under the color of law; and 2) the challenged conduct deprived Plaintiff of a right secured by the United States Constitution or a federal statute. *Parratt v. Taylor*, 451 U.S. 527, 535

5

(1981). The doctrine of qualified immunity is designed to insulate state actors from liability in close-call situations. *Saucier v. Katz*, 533 U.S. 194, 206 (2001). Once qualified immunity has been raised, "the plaintiff must show that (1) the defendant violated a constitutional right and (2) that the right was clearly established." *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016).

### III. ANALYSIS

Defendants Lee and Ruehling raised qualified immunity as an affirmative defense in their Answer [Doc. 15] and reiterated these claims in their Memorandum and Motion for Summary Judgment. [Docs. 31 & 32]. Specifically, they maintain that the officers retain qualified immunity from suit under § 1983 "insofar as [their] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). [Doc. 32 at 11]. They argue that there is no clearly established right against Lee's attempting to stop Harrod and subsequent attempt at handcuffing, and that there is no clearly established right against Ruehling's arrest and prosecution of Harrod for resisting and evading arrest. [*Id.*]. Plaintiff disagrees, asserting *inter alia* that 1) Lee never had reasonable suspicion to stop Harrod, 2) Lee was unjustified in attempting to handcuff Harrod, and 3) that Ruehling did not have probable cause to arrest and prosecute Harrod. [Doc. 37 at 4-18]. Defendants' reply brief addressed all of Plaintiff's disputes, emphasizing the lack of case precedent presented by Plaintiff to support his positions. [Doc. 38].

**Defendant Lee's Stop and Attempted Handcuffing of Plaintiff Harrod**

The Defendants assert that Lee had reasonable suspicion to conduct a *Terry* stop when Harrod emerged from the apartment building and walked towards her. [Doc. 32 at 11-12]. The undisputed facts show that a concerned neighbor had placed a 911 call alerting officers to a domestic situation occurring in the apartment building Harrod emerged from. [Doc. 33-1 at 44].

Even assuming Lee did not yet know that the subject of the 911 call was wearing an orange shirt,[3] she still knew by the time she arrived that a 911 call had been placed about a man attempting to kick in a door at the apartment in question. [Doc. 33-1 at 4]. She saw Harrod emerging from the apartment building in question and attempted to make an investigatory stop. "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Adams v. Williams*, 407 U.S. 143, 146

Plaintiff disagrees and argues that Lee did not have reasonable suspicion that a crime had occurred or that Harrod was involved in the commission of any crime. [Doc. 37 at 4-7]. Curiously, Plaintiff does not provide any authority for his assertion that Lee's knowledge of a domestic disturbance involving a man in the apartment building in question did not support her having the reasonable suspicion necessary to conduct an investigatory stop. He asserts that reasonable suspicion "typically requires that the subject seized at least 'roughly' match the suspect." [Doc. 37 at 5]. Plaintiff concedes that the 911 caller had stated that she was concerned the man may hurt the woman inside the apartment, but then argues that this knowledge couldn't support reasonable suspicion because nothing on the scene indicated that an assault had occurred, and "fear of a past assault…is fully distinct from reasonable suspicion of a completed misdemeanor." [Doc. 37 at 6].

Plaintiff's arguments fall woefully short. First, as Defendants note, courts have repeatedly held that physical and temporal proximity to a crime scene,[4] can help establish reasonable

---

[3] Everyone agrees that Ruehling had been notified that Harrod was wearing an orange shirt. Due to separate audio and visual files, it is unclear whether Lee received this information immediately before or immediately after first grabbing Plaintiff's shirt. The Court resolves this dispute in favor of the non-moving party and analyzes the situation assuming Lee had not yet been told that the suspect was wearing an orange shirt.

[4] The Court notes that Plaintiff argues against this scene being considered a crime scene and engages in a winding discussion of why it should not have been considered a crime scene prior to the detention and later arrest of Harrod. However, Plaintiff's arguments are misguided – whether an actual crime had occurred is irrelevant to whether police officers responding had an objectively reasonable belief that a crime may have occurred. Plaintiff has offered

7

suspicion. *See United States v. Atkins*, 513 F. App'x 577, 580 (6th Cir. 2013) (finding reasonable suspicion in part based on the defendant's "temporal and physical proximity to the reported crime"), *United States v. Thornton*, 621 F. App'x 324, 328 (6th Cir. 2015) (finding that the fact police encountered the defendant and only the defendant near the scene of a reported crime supported reasonable suspicion). In addition, it is undisputed that Lee 1) heard banging from the upstairs of the apartment building in question upon her arrival, 2) saw someone standing outside an apartment door through an upstairs foyer window, and 3) believed that same person walked down the stairs and emerged from the building. [Doc. 37-1 at 4-6]. Combining these observations with the prior 911 call indicating that disorderly conduct had occurred or was occurring and that the caller was concerned for the apartment occupant's safety easily supports a finding that Officer Lee had reasonable suspicion to stop Harrod when he exited the building in order to ascertain more information. "The reasonableness of an officer's actions must be judged from the perspective of a reasonable officer on the scene, and not by 20/20 hindsight." *Lee v. Hefner*, 136 F. App'x 807, 813 (6th Cir. 2005). Based on the undisputed facts in the record, the Court finds that any reasonable officer in Lee's position would have had reasonable suspicion to engage Plaintiff in a brief *Terry* investigative stop. Because Officer Lee's reasonable suspicion justified her initial stop, the initial stop did not violate any constitutional right.

Plaintiff's Complaint also alleges that Officer Lee committed a false arrest by "trying to arrest" Plaintiff without probable cause. [Doc. 1 at 4-5]. Defendants contend both that the attempted handcuffing was not an arrest, but part of the *Terry* stop, or in the alternative that Officer Lee's reasonable suspicion had ripened into probable cause to justify the arrest when he "forcibly resisted" her attempt to conduct the *Terry* stop. [Doc. 32 at 14]. Plaintiff cursorily disputes

---

nothing to show why a reasonable officer possessing the knowledge that Lee possessed at the time would not believe that a crime may have occurred.

Defendants' first argument and functionally ignores the probable cause argument.

As explained below, the Court finds that Officer Lee had developed probable cause to arrest Plaintiff Harrod and thus did not violate his constitutional rights when trying to apply handcuffs. The Fourth Amendment requires probable cause to justify arresting an individual. *Barton v. Martin*, 949 F.3d 938, 950-51 (6th Cir. 2020). In the Sixth Circuit, "[p]robable cause to arrest someone exists if 'the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense.'" *Atkins v. Twp. of Flint*, 94 Fed.Appx. 342, 347 (6th Cir. 2004) (quoting *Diamond v. Howd*, 288 F.3d 932, 936–37 (6th Cir. 2002) "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *See Barton*, 949 F.3d at 950 (quoting *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002)). Disputed facts likewise make a probable cause determination inappropriate on summary judgment. An arresting officer's state of mind – except for facts he knows – "is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). "That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id.* Additionally, "the court must 'view the facts in the light depicted by the videotape'" when such evidence is present. *Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012) (quoting *Scott v. Harris*, 550 U.S. 372, 378-81 (2007).

Here, the video evidence clearly shows Officer Lee in full police uniform attempting to stop Harrod as he emerges from the apartment building. [Surveillance Video at 00:09]. Harrod then continues to back away from Lee while she maintains a grip on his shirt. [Surveillance Video at 00:09-00:27]. She then attempts to turn Harrod around to face a vehicle while maintaining a grip

on his outstretched left hand. [Surveillance Video at 00:27-00:29]. Plaintiff then swings his arm around attempting to free himself from Lee's grasp. [Surveillance Video at 00:29-00:30]. Lee than attempts to pin Harrod against another vehicle and appears to be attempting to recapture control of his arms. [Surveillance Video at 00:30-00:34]. Harrod briefly struggles against Lee's attempts to control his arms, eventually conceding and allows himself to be turned to face the vehicle with one arm behind his back. [Surveillance Video at 00:58-01:01]. When Lee has Harrod's arm controlled behind his back, we see her reach for her handcuffs for the first time. Harrod then breaks free from Lee's grasp and dashes across the parking lot with Lee in pursuit. [Surveillance Video at 01:03].

At the moment Lee reached for her handcuffs, she had probable cause to believe that Harrod was in violation of Tenn. Code Ann. § 39-16-602(a)[5] – the Tennessee state statute for Resisting Arrest. Lee was in full police uniform, leaving no doubt as to her status as a law enforcement officer. Further, the surveillance video shows multiple instances of Harrod flailing his arms or intentionally using force to prevent or obstruct Lee from effecting her stop. These facts together support probable cause to arrest Harrod for resisting arrest, justifying her attempted use of handcuffs. Accordingly, Officer Lee's attempted handcuffing of Plaintiff did not violate any constitutional right.

Even if the Court needed to analyze qualified immunity under the clearly established prong,[6] Defendants would still prevail. Plaintiff's only argument against qualified immunity when discussing the attempted handcuffing comes from *Smoak v. Hall* and *Brown v. Lewis*. In *Smoak*,

---

[5] The criminal statute provides: "It is an offense for a person to intentionally prevent or obstruct anyone known to the person to be a law enforcement officer…from effecting a stop, frisk, halt, arrest or search of any person, including the defendant, by using force against the law enforcement officer or another." Tenn. Code Ann. § 39-16-602(a).

[6] The Court makes it clear that Officer Lee did not violate any constitutional rights of Plaintiff by attempting to handcuff Harrod. This additional analysis merely explains that qualified immunity would cover Officer Lee's actions even if a constitutional violation had occurred.

the Sixth Circuit condemned the handcuffing of a family suspected of robbery during a traffic stop and considered the seizure unreasonable while still granting the officers qualified immunity, stating "[t]he Smoaks have not, however, met their burden of demonstrating that the THP troopers on the scene should have known that the unreasonable seizure was in violation of the Smoaks' constitutional rights." *Smoak v. Hall*, 460 F.3d 768, 782 (6th Cir. 2006). In *Brown*, the Sixth Circuit found officers not entitled to qualified immunity when they unreasonably seized an "entirely compliant" suspect as she emerged from a vehicle following a 911 call. *Brown v. Lewis*, 779 F.3d 401, 417 (6th Cir. 2015). The problem for Plaintiff is that these cases are easily distinguishable from the instant situation. In both cited cases, the Plaintiffs were compliant.[7] Here, video of the incident very clearly shows a completely noncompliant Harrod. Having failed to offer any analogous cases or precedent cutting against qualified immunity in this situation, the Court concludes that even if Lee's conduct had violated Plaintiff's constitutional rights, Plaintiff failed to meet his burden of demonstrating that the right that was clearly established.

### Defendant Ruehling's Arrest and Prosecution of Plaintiff Harrod

Plaintiff asserted in the Complaint that Ruehling arrested Harrod without probable cause, committing false arrest in violation of Harrod's constitutional rights. [Doc. 1 at 5]. In their Motion for Summary Judgment, Defendants asserted that Plaintiff's "false arrest claims are barred because his guilty pleas established probable cause for his arrest on the resisting and evading charges regardless of whether there was probable cause for the aggravated assault charge." [Doc. 32 at 19]. They further proactively argued that an expected, but not pled, malicious prosecution claim would fail for the same reasons they asserted against the false arrest claim. [Doc. 32 at 19-20]. Plaintiff responded in opposition, arguing 1) that neither officer had probable cause to arrest Plaintiff, 2)

---

[7] "The Smoaks had obediently complied…" *Smoak*, 460 F.3d at 781. "…she was entirely compliant throughout the stop…" *Brown*, 779 F.3d at 418.

that Plaintiff's probable cause challenge as to his false arrest claim is not barred because he was never convicted, and 3) that Defendants are mistaken as to the malicious prosecution claim. [Doc. 37 at 10-13]. Defendants replied detailing their disagreements with Plaintiff's opposition. [Doc. 38 at 8-11].

The Court has reviewed the arguments of the parties in depth and finds most of the discussion from both sides to miss the mark. The Court is extremely skeptical of Defendants' unsupported assertion that Plaintiff's guilty plea "established" probable cause for arresting Plaintiff when the guilty plea came months after the incident. As for Plaintiff's side, counsel only cursorily addresses the probable cause question as to Ruehling, stating without citation to the record, that Ruehling "was not even present, but nonetheless filed charges…" [Doc. 37 at 11]. This assertion is directly contradicted by Ruehling's undisputed deposition testimony where he stated "[w]hen I pulled up I saw the very tail end of the encounter between Mr. Harrod and Officer Lee." [Doc. 33-3 at 2]. Additionally, the video recording of the incident shows Ruehling's squad car fly across the screen [Surveillance Video at 01:17] in pursuit of Harrod two seconds after Harrod breaks free of Lee's grasp and she falls to the ground. [Surveillance Video at 01:15]. Rather than follow the parties meandering discussion of issues not relevant in this case, the Court analyzes the question of probable cause on the undisputed facts in the record.

The Court previously provided the Sixth Circuit's probable cause framework and engages in the same analysis here. Put plainly, there are no disputed facts in the record as to what Ruehling saw or knew. The undisputed facts show that Ruehling "saw the very tail end of the encounter between Mr. Harrod and Officer Lee…it appeared that he had made contact with his foot with her leg and she fell down." [Doc. 37-2 at 3]. Ruehling also testified that the eyewitness who originally made the 911 call was giving him "direct information" and at one point told him that Mr. Harrod

was "fighting the cops." [Doc. 37-2 at 6-7]. Plaintiff has not, and in fact cannot, point to evidence in the record disputing that these facts and circumstances were in Ruehling's mind at the time he arrested Harrod. From the facts, the only reasonable determination is that Ruehling had probable cause to believe that Harrod was in violation of Tenn. Code Ann. § 39-16-602(a)[8] – the Tennessee state statute for resisting arrest. Because Officer Ruehling possessed probable cause to arrest Harrod on the resisting arrest charge, Plaintiff's claims of false arrest must fail. *Howse v. Hodous*, 953 F.3d 402, 409 (6th Cir. 2020) ("the constitutional tort claim of false arrest fails so long as there's just one valid reason for the arrest"). As Plaintiff concedes that malicious prosecution requires a showing of false arrest in addition to a later dismissal of the criminal charges, his malicious prosecution claim, even if it had been properly pled, would fail as well. [Doc. 37 at 12].

### *Monell* Liability as to the City of Tullahoma

The general rule when analyzing municipal liability in §1983 cases is that a "municipality cannot be liable under *Monell* absent an underlying constitutional violation." *Martin v. Maurer*, 581 F. App'x 509, 512 (6th Cir. 2014). As the Court has found that Officers Lee and Ruehling did not commit any constitutional violations, there can be no liability for Defendant City of Tullahoma.

### IV. CONCLUSION

For the reasons explained above, the Court finds that Officer Lee's initial stop was supported by reasonable suspicion and that her attempted handcuffing was supported by probable cause. Further, Officer Ruehling's arrest was properly supported by probable cause, precluding any claim of false arrest. The officers did not commit any constitutional violations. Accordingly, there is no *Monell* liability as to the City of Tullahoma. On these grounds, Defendants' Motion

---

[8] It is undisputed that Officer Lee was in full police uniform. Accordingly, there is no dispute that Harrod knew Lee was a law enforcement officer. From the undisputed testimony, Ruehling believed that he saw Harrod use force to prevent Lee from stopping, halting, or arresting the suspect. [Doc. 37-2 at 3 and 5]. It matters not what actually occurred, as the probable cause inquiry is to what the officer believed at the time based on the facts known to him.

for Summary Judgment [Doc. 31] is **GRANTED** and Plaintiff's Claim of Unreasonable Seizure is **DISMISSED**. This matter is hereby **DISMISSED WITH PREJUDICE**. An appropriate judgment will follow.

**SO ORDERED.**

/s/*Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY JR.**
**UNITED STATES DISTRICT JUDGE**